When the government offered Mr. Dedmon a cooperation plea agreement to resolve his case, it knew at that time the facts surrounding the three robberies that were charged in the case, exactly what sort of cooperation the government wanted from Mr. Dedmon and exactly what sort of cooperation Mr. Dedmon was going to be able to provide at that late point in the case. Mr. Dedmon then signed the plea agreement, he pled guilty, and then he provided the government exactly the cooperation that it wanted, and that cooperation had the exact effect that the government wanted, which was to get the co-defendant, Mr. Scott, to plead guilty in his state case. Despite this, the government declined to make a 3553E departure request at the time of sentencing. Counsel, let's suppose that your client did, that I agree with every word that you said. What promise do you have from the government when the plea agreement says, in the government's sole discretion, exclusive discretion? The promise we had from the government was to, in good faith, decide whether the cooperation What page of the agreement is that? Which paragraph? E.R. page 77. Okay. If the USAO determines in its exclusive judgment that Mr. Dedmon defendant has both complied with his obligations under paragraphs 17 and 18 above and provided substantial assistance meriting a sentence below the mandatory minimum term of imprisonment dictated by statute, the USAO will move the court in pursuant to that. And did the US attorney make that judgment in its exclusive judgment? Did it make that determination in its exclusive judgment? I think it made that determination before Mr. Dedmon pled guilty, and that's the problem in this case. The reasons the government gave for not moving under section 3553E Why does the government even have to explain? The government has to explain because Mr. Dedmon pled guilty to a plea agreement where he was facing a minimum sentence of 32 years in prison. And Mr. Dedmon had a right to know when he entered that plea or decided to enter that plea whether he had the possibility of getting less than 32 years in prison. And the problem we have in this case is the reasons the government gave for declining to move under 3553E at the time of sentencing were facts that it knew at the time he pled guilty, the seriousness of the crimes. The government knew exactly what happened in those three robberies at the time Mr. Dedmon had pled guilty. Two previous co-defendants had already pled. The government also said the late timing of the cooperation. Well, the government knew absolutely that this cooperation was late in time and that the only co-defendant left to cooperate against was Mr. Scott. And so this is a classic bait and switch. The government puts the 3553E language in the plea agreement, giving Mr. Dedmon the honest and reasonable belief that they would in good faith consider a departure under the 32-year mandatory minimum sentence. But the facts of this case show that that was never a possibility. The government never intended to allow Mr. Dedmon to get anything less than 32 years in prison in this case. Of course, the 3553E is not co-extensive with the 5K1.1 departure, correct? It was a separate analysis, correct. Two separate analyses. So he knew he was going to get the 5K1.1. The other was at the discretion of the government. But then that part of the statute adds whether you merit a sentence below the mandatory minimum. And maybe following on, Judge Bybee, what is the evidence that the government didn't give some consideration as to whether he merited a sentence below the mandatory minimum? This is the answer to that, Judge McKeown. The two examples that I just gave, the reasons that it gave, it already knew at the time of the plea. But I think even more than that, we need to look at the unknown variable in this case. And the unknown variable in this case was the cooperation. But this wasn't a classic cooperation case where, you know, my guy is looking at a ton of time and I call the AUSA and we decide he's going to come in and the government is not sure what kind of information the defendant is going to have and the defendant is not sure if the government is going to want to have, want to follow up on that information. This was a very narrowly defined and narrowly tailored cooperation process. The government said, we want you to debrief. We want you to be willing to testify against Mr. Scott. And this is the most important part. We want to tell Mr. Scott that you're going to testify against him. And that's rare. I mean, generally cooperation doesn't include that sort of public divulgence of information. We're going to tell Mr. Scott you're going to testify against him because we want him to plead guilty. And that's exactly what Mr. Dedman did. This isn't just a case where Mr. Dedman could not have done more in connection with his cooperation, which is also true. This is a case where the government knew exactly what it wanted from Mr. Dedman prior to having him plead guilty. And Mr. Dedman delivered everything and more because the government got the exact result it wanted. Counsel, one of the things that's a little bit odd about this case is that it looks like there was, it looks like the U.S. Attorney's Office disagreed with the assessment from the district court based on how many years it thought that your client should get because it thought that the probation office had cut him a pretty favorable deal. Exactly. But your client actually got the deal that the probation office was recommending, didn't it? He did, but the probation recommendation did not include the substantial assistance component. Right. But it did sort of adjust for it in other ways. Well, yes. He ended up getting the 32 years, the one month, the district judge went down to one month. He gets the 385, which was exactly what the probation office recommended and not what the U.S. Attorney wanted. So the U.S. Attorney did not get what it wanted out of this, out of its recommendation. Well, that's true, but it got 32 years for a gentleman who committed three armed robberies when he was 18. He's borderline mentally retarded. He's in the bottom 5% of mental functioning. And when he pled guilty, he believed, and rightly so, that if he did exactly what the government had laid out for him, he would have a chance to get less than 32 years. Judge Whaley was pretty sympathetic to the plight of your client. It seemed like he really wanted to give him less than 32 years, but he felt like his hands were tied and he couldn't do it. And that's why this court has the power to look at this case, look at whether that language was illusory, and then send it back to Judge Redd, or I guess maybe to a different district judge, to give that court the power to do what's just in this case. And a 32-year, one-month sentence for this gentleman who endured a horrible, horrible childhood. The damage to Mr. Dedman started when he was in his mother's belly and she was smoking drugs and drinking. And it continued up until the time he became an adult and did these bad acts. But we're not here to look at the length of the sentence by itself and say if that's just what we're here to look at is the plea agreement and whether the government exercised good faith in connection with the plea agreement. For the reasons I've said this morning, I think it's clear the government never intended to give Mr. Dedman any less than 32 years in prison in this case, and that's something Mr. Dedman was entitled to know when he pled guilty. May I reserve my final two minutes for rebuttal? Thank you. Good morning, Your Honor. May it please the Court. Elizabeth Gay on behalf of the United States of America. The government did not fraudulently induce the defendant, Marquise Dedman, into entering a cooperation plea agreement. And at the time he signed the plea agreement, his cooperation and the possibility that it would rise to the level of substantial assistance meriting both a 5K and a sentence below the statutory mandatory minimum was very real and not at all illusory. It is sheer speculation on the part of the defense that at the time the defendant signed the cooperation plea agreement that the government had absolutely no intention to make a motion under 3553E. As set forth in the record, at the time the defendant entered into his cooperation plea agreement, there was a fourth member of his armed robbery crew that was still pending prosecution, and that was the juvenile, Kershawn Scott, in state court. At that time, the parties had no indication whether Mr. Scott would plead guilty, whether he would proceed to trial, what the disposition of that case would be. And I think that is borne out by the fact that after Mr. Dedman signed his cooperation plea agreement, his sentencing was continued for approximately three years. And the basis for those continuances, as set out in some of the excerpts of record 208 to 210, 170 to 172, and 179 to 82, were his cooperation and potential testimony in the state case against the juvenile. And Mr. Scott did what? He pled? Mr. Scott eventually pled guilty, and as set forth in the government's declaration that it filed with the district court, excerpts of record 103 to 107, it was due to Mr. Dedman's cooperation and his knowledge that Mr. Dedman would be testifying against him. But as counsel said, the only thing left at this point was Mr. Scott. So the only cooperation he possibly could have given was related to Scott. He gave cooperation. Scott pleads guilty. So their argument is really, in reality, there was nothing more to happen in terms of the outcome of the plea agreement. And it was, as I say, false hope, and it's sort of a bait and switch, because there was nothing more could have happened beyond what did happen. Your Honor, the inquiry is what the party's expectations and intent was at the time of the signing of the plea agreement. And here, at the time of the signing of the plea agreement, no one had any idea what would happen in the Scott case. There was no expectation that Mr. Dedman's cooperation would immediately result in a guilty plea by Mr. Scott. And the fact that the case stretched out for three years and it appeared headed for a contested proceeding bears that out. So at the time of the negotiation agreement and the execution agreement by both parties, there was no understanding of what was going to happen in the juvenile's case. But the difficulty I'm having is, if he was going to provide the information, whether by testimony or information to the U.S. attorney, about Mr. Scott, what difference does it make whether he went to trial or he pled guilty? Well, Your Honor, the fact of the matter is, is a cooperator's, a defendant's cooperation is more valuable if they are subject to testimony. That is because it is far riskier for the cooperator. It is personally more costly. It's cheaper for the government if you can get the guy to plead. And if he's got, if the government's got Dedman's testimony and Scott knows that, then Scott thinks it's in his own interest to plead. You, of course, did not have to accept the plea from Mr. Scott. You could have said, no, we're going to take you to trial. Why not? Your Honor, just one correction. Mr. Scott's case was in state court, and so the U.S. attorney's office had no say in whether they decided to accept the plea or put, you know, the state to its proof and proceed to trial. With regard to So the whole matter as to whether, as to whether, as to whether Dedman had to So that makes it even one step further in terms of things being fixed at the outset. Yeah. Your idea as to whether he's cooperated or not turns out on whether the district attorney decides to take the case to trial or whether it decides to plead Mr. Scott out. Well, I believe the valuation of his cooperation would depend on whether the state Mr. Dedman's cooperation that led to Mr. Scott's guilty plea, and it assessed whether that cooperation rose to the level of substantial assistance in the law enforcement prosecution or investigation or another, which the government determined it did, and it merited a 12 level 5K. The government also had retained and contracted with the defendant the right to, in its exclusive judgment, determine whether that same cooperation rose to the level of substantial assistance meriting a sentence below the statutory mandatory minimum. I mean, you won the negotiations here. You've got language in here that says it's your exclusive judgment. I don't know how we can question that. But I haven't heard anything from the government that says, here's why we didn't think that Dedman gave us substantial assistance. Your Honor, the government's not saying we didn't think Mr. Dedman gave us substantial assistance. Clearly, the government did believe he did, and it rewarded him with a 12 level 5K. What the government believed was that the substantial assistance did not merit a sentence below the statutory mandatory minimum. Isn't it true that the government's real beef here turns out to be with the probation office's recommendation? No, Your Honor, not at all. The probation office does its calculations, and it makes its recommendation based on what the probation office believes is appropriate. The government made its recommendation based on what the government believed was appropriate in terms of the extent and the value of Mr. Dedman's cooperation. While the government's recommendation was different and disagreed with the probation office, the government's 5K recommendation of 3553E decision had nothing to do with the probation department's recommendation. But, you know, as far as from Mr. Dedman's point of view in terms of why did he enter into this agreement, well, he was going to get a two-pronged relief, the 5K, and then he was going to get the statutory potential for the statutory relief. And under the facts here, there's nothing more he could have done, right? Is there anything more he could have done? No, Your Honor. So it's basically the roll of the dice that a DA who's not under the control of the U.S. attorney decides we better the guy's going to plead guilty, so why not take the guilty    who have pleaded guilty, and the result of that is now you have two people who have pled guilty saving the system, two systems, a boatload of money, but apparently it's not enough. There's nothing more he could have done, but it was not enough. So why, you know, what's the government's justification for that? The government's justification is that it did retain the exclusive discretion to make that judgment call, and it did in good faith. And the court So that really maybe is the question, is it's easy to say those words, and I don't dispute that the government believes them, but how do you benchmark good faith when you're at this stage? I think you look to the record to see if there's any evidence that the government did not act in good faith. I think you have to basically prove the negative, and here there is no evidence that the government did not act in good faith. The reality is, as a result of this cooperation plea agreement, Mr. Gednan did not have to plead to the third 924C, which would have resulted in a mandatory minimum sentence of at least 57 years. He was given the possibility of a 5K reduction as well as a 3553E motion. He got the benefit of his bargain, Your Honors. He got a 5K up to 12 levels, even though he was, as Mr. Bertram notes, the last cooperator in. And I would just like to note for the record that the first cooperator in received a 6-level 5K. So the, quote, unquote, untimeliness of Mr. Gednan's cooperation did not work to his detriment. And, in fact, he did cooperate, and Mr. Bertram is correct, in the only area that the parties contemplated him cooperating, and that would be against Mr. Scott and the State Court proceeding. Unless the Court has any further questions on any other issues, the government would submit. Thank you. Thank you. Just a couple of additional comments. Judge McKeown, I think you hit the nail on the head. You said there was nothing left in the calculus besides the cooperation. And the government said, well, Mr. Gednan wasn't able to testify. Well, that's true. But Mr. Gednan was outed to Mr. Scott as someone not only who was cooperating, but who was willing to go to court and testify against him and put him in state prison. And that's not the actual equivalent of testifying in court, but it's pretty close. And so for the government to say, well, the plea, it was just a plea, it wasn't testimony, that's not fair to Mr. Gednan because he went far above and beyond simply compelling a plea. He was outed in public as someone who was going to testify against Mr. Scott. The government does have broad language for this second substantial assistance prong. But the case law says you have to exercise discretion with good faith and good faith. Our point here is the government never exercised any discretion because it knew at the time it obtained Mr. Gednan's guilty plea that he was going to do 32 years. Even this morning, the government still has not told us why it acted in good faith. It just keeps going back to the fact, well, we have this discretion in the plea agreement. Well, I think the government has said that had the case gone to trial, although you claim he's been outed already, that is of a different magnitude when you have to come in and testify. So there was one more thing that could have happened. It just didn't. All the other reasons it's given were facts it knew at the time of the plea. And I cited the Knight's case from the Second Circuit, which deals with a very, very similar situation. And the Second Circuit could not have been more clear that you can't rely on things you knew at the time of a plea to later on deny relief when you knew those things at the time you induced the guilty plea. And so, again, if the government wanted to give Mr. Gednan 32 years in prison, which I think is absolutely outrageous, then it should have taken that 3553E language out of the plea agreement, and it should have made Mr. Gednan aware of why he was signing when he pled guilty, which was a minimum sentence of 32 years. Thank you. Thank you very much. I thank both counsel for your argument this morning. The case of United States v. Gednan is submitted.
judges: McKeown, Gould, Bybee